TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00413-CV






Carolyn Ott, Appellant



v.



Texas Department of Public Safety, Appellee






FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY


NO. 235,297, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING






 Carolyn Ott appeals a county court at law judgment affirming an administrative
order that sustained the suspension of her driver's license. See Tex. Transp. Code Ann.
§ 724.015(2) (West 1998). Ott brings one point of error, complaining that the county court at law
erred in affirming the order because the finding that she refused the request for a specimen is not
supported by substantial evidence. We will affirm the administrative order.


THE CONTROVERSY


 A witness testified that Ott's car had been weaving from lane to lane of Loop One
in Austin before it struck the side of another car, causing a two-car accident. When Officer James
Beck of the Austin Police Department arrived at the scene, Ott remained in the driver's seat of
her car which had spun around facing south in the northbound lane of the highway. Officer Beck
asked Ott if she was injured: she stared at him and asked where her shoes were. He smelled
alcohol on her breath and noticed that her eyes were bloodshot and her speech slurred. He did
not immediately ask Ott to perform field sobriety tests, preferring to wait for EMS personnel to
remove her from the car and determine the nature of her injuries. Ott was removed from the car
and taken by ambulance to the emergency room of a local hospital. Officer Beck accompanied
her to the emergency room where he learned from hospital personnel that her injuries were not
serious but that she was very drunk. Officer Beck approached Ott and read to her the statutory
warning before requesting a blood sample. See id. § 724.015. He handed her a written copy of
the warning; Ott laid the warning on her chest and closed her eyes. After giving the oral warning,
Officer Beck asked Ott if she understood; she opened her eyes, stared at the ceiling and told him
she did not understand. Officer Beck read the warning again, Ott again closed her eyes. Officer
Beck read the warning four times, trying to get Ott to consent to a blood specimen test. Officer
Tim Preston then joined Beck and told Ott that her failure to answer yes or no to the request for
a blood sample would be considered a refusal and her driver's license would be suspended. See
id. In response, Ott looked at the officers and asked for her mother. An hour and a half later,
a hostile and argumentative Ott was released to Officer Beck who placed her under arrest.


ANALYSIS


 A driver challenging the automatic suspension of her driver's license is entitled to
a hearing before an administrative law judge (ALJ) of the State Office of Administrative Hearings. 
See id. § 724.041. The Department of Public Safety must prove by a preponderance of the
evidence that reasonable suspicion or probable cause existed to stop or arrest the driver; that
probable cause existed to believe the driver was operating the vehicle while intoxicated; that the
driver was placed under arrest and a specimen of blood or breath was requested; and that the
driver refused the request. Id. § 724.042. The license suspension will be upheld upon an
affirmative finding to each issue. Id. § 724.043. A person whose license is suspended after the
administrative hearing is entitled to judicial review of the decision, based on the substantial
evidence rule. Tex. Gov't Code Ann. §§ 2001.003(7), .171, .174 (West Supp. 1997).

 Under the substantial evidence rule we review the reasonableness of the
administrative order, not its correctness. See El Paso v. Public Util. Comm'n, 883 S.W.2d 179,
185 (Tex. 1994). Findings, inferences, conclusions, and decisions of an administrative agency
are presumed to be supported by substantial evidence and the burden is on an appellant to prove
otherwise. Id.

 In her sole point of error, Ott alleges there is not substantial evidence to support
the ALJ's finding that she refused the request for a specimen. Essentially, Ott argues that there
must be an express refusal before she suffers the statutory consequence of automatic license
suspension. See Tex. Transp. Code Ann. § 724.035. She insists that her silence or
nonconcurrence did not amount to a refusal, but rather demonstrated that she was incapable of
refusing, either because she was so sleepy or so intoxicated. Under the statutory scheme, every
driver is presumed to consent to giving a specimen, and a person who is "dead, unconscious, or
otherwise incapable of refusal" will be considered as not having withdrawn this presumed consent. 
See id. §§ 724.011, .014(a). Ott argues that because her condition rendered her incapable of
refusing, the officers should have attempted to take the specimen without her consent, and only
if this provoked an express refusal should her license have been automatically suspended. We
disagree with this reading of the statute which would encourage officers to proceed to take a
specimen without consent whenever circumstances indicate an individual may be incapacitated. 
The statute does not require an express refusal and supports the officers' preferable behavior of
reading the statutory warning four times in an effort to solicit consent, and finally treating an
intentional failure to respond as a refusal. See id. §§ 724.032, .035. (1)

 Whether Ott's closed eyes and unresponsive answers constituted a deliberate
evasion of the officers' request for a specimen or reflected her inability to understand their request
was a question of fact. A reviewing court may not substitute its judgment regarding the weight
of the evidence for that of a state agency. Tex. Gov't Code Ann. § 2001.174; Public Util.
Comm'n v. Gulf States Utils. Co., 809 S.W.2d 201, 211 (Tex. 1991). Any conflict in the
evidence regarding Ott's response to the officers' request for a blood specimen was a matter for
the ALJ to resolve. See Texas Dept. of Pub. Safety v. Latimer, 939 S.W.2d 240, 245 (Tex.
App.--Austin 1997, no writ) (citing Texas Dep't of Pub. Safety v. Raffaelli, 905 S.W.2d 773, 778
(Tex. App--Texarkana 1995, no writ), ALJ decides weight to be given testimony regarding
whether suspect refused to give specimen)). The testimony reveals that the officers specifically
informed Ott that if she did not give a direct yes or no answer, they would consider her failure
to respond a refusal. She responded by asking for her mother. In Raffaelli, the reviewing court
found that the driver's continued insistence on his lawyer's presence supported the administrative
finding that Raffaelli had refused to give consent. 905 S.W.2d at 777-78. In Latimer, we held
that an injured driver's insistence on talking to his wife before giving a specimen could reasonably
support the agency's finding that he had refused the request. 939 S.W.2d at 945. From Ott's
evasive behavior and her nonresponsive request for her mother, reasonable minds could conclude
that she was refusing to give a blood specimen. Because there is substantial evidence in the
agency record to support the suspension of her driver's license, we overrule Ott's sole point of
error.

 Accordingly, we affirm the judgment of the trial court affirming the agency's
decision.



 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: January 8, 1998

Publish

1. Section 724.032, which provides for notice of suspension, states that "if a person refuses to
submit to the taking of a specimen, whether expressly or because of an intentional failure of the
person to give the specimen . . . ." Tex. Transp. Code Ann. § 724.032 (emphasis added). 
Section 724.035, which details provisions for the suspension of a license, merely states "if a
person refuses the request of a peace officer to submit to the taking of a specimen . . . ." Id. §
724.035.


 is on an appellant to prove
otherwise. Id.

 In her sole point of error, Ott alleges there is not substantial evidence to support
the ALJ's finding that she refused the request for a specimen. Essentially, Ott argues that there
must be an express refusal before she suffers the statutory consequence of automatic license
suspension. See Tex. Transp. Code Ann. § 724.035. She insists that her silence or
nonconcurrence did not amount to a refusal, but rather demonstrated that she was incapable of
refusing, either because she was so sleepy or so intoxicated. Under the statutory scheme, every
driver is presumed to consent to giving a specimen, and a person who is "dead, unconscious, or
otherwise incapable of refusal" will be considered as not having withdrawn this presumed consent. 
See id. §§ 724.011, .014(a). Ott argues that because her condition rendered her incapable of
refusing, the officers should have attempted to take the specimen without her consent, and only
if this provoked an express refusal should her license have been automatically suspended. We
disagree with this reading of the statute which would encourage officers to proceed to take a
specimen without consent whenever circumstances indicate an individual may be incapacitated. 
The statute does not require an express refusal and supports the officers' preferable behavior of
reading the statutory warning four times in an effort to solicit consent, and finally treating an
intentional failure to respond as a refusal. See id. §§ 724.032, .035. (1)

 Whether Ott's closed eyes and unresponsive answers constituted a deliberate
evasion of the officers' request for a specimen or reflected her inability to understand their request
was a question of fact. A reviewing court may not substitute its judgment regarding the weight
of the evidence for that of a state agency. Tex. Gov't Code Ann. § 2001.174; Public Util.
Comm'n v. Gulf States Utils. Co., 809 S.W.2d 201, 211 (Tex. 1991). Any conflict in the
evidence regarding Ott's response to the officers' request for a blood specimen was a matter for
the ALJ to resolve. See Texas Dept. of Pub. Safety v. Latimer, 939 S.W.2d 240, 245 (Tex.
App.--Austin 1997, no writ) (citing Texas Dep't of Pub. Safety v. Raffaelli, 905 S.W.2d 773, 778
(Tex. App--Texarkana 1995, no writ), ALJ decides weight to be given testimony regarding
whether suspect refused to give specimen)). The testimony reveals that the officers specifically
informed Ott that if she did not give a direct yes or no answer, they would consider her failure
to respond a refusal. She responded by asking for her mother. In Raffaelli, the reviewing court
found that the driver's continued insistence on his lawyer's presence supported the administrative
finding that Raffaelli had refused to give consent. 905 S.W.2d at 777-78. In Latimer, we held
that an injured driver's insistence on talking to his wife before giving a specimen could reasonably
support the agency's finding that he had refused the request. 939 S.W.2d at 945. From Ott's
evasive behavior and her nonresponsive request for her mother, reasonable minds could conclude
that she was refusing to give a blood specimen. Because there is substantial evidence in the
agency record to support the suspension of her driver's license, we overrule Ott's sole point of
error.

 Accordingly, we affirm the judgment of the trial court affirming the agency's
decision.



 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: January 8, 1998

Publish

1. Section 724.032, which provides for notice of suspension, states that "if a person refuses to
submit to the taking of a specimen, whether expressly or because of an intentional failur