In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00053-CV


______________________________




TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant



V.



MICHAEL B. ELLER, Appellee




 


On Appeal from the County Court at Law


 Panola County, Texas


Trial Court No. 2009-067




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Michael B. Eller was stopped by a police officer while driving because his license plate was
not properly illuminated. During the investigation of the illumination issue, Eller admitted he had
been drinking. The officer administered several field sobriety tests, which Eller failed. Intoxilyzer
tests confirmed Eller's blood alcohol level was well above the legal limit. He received notification
that his driver's license was being suspended by the Texas Department of Public Safety (DPS). 

 Eller requested a hearing in front of an administrative law judge (ALJ) to determine whether
suspension of his driver's license was warranted. The ALJ found that it was. Eller sought judicial
review of the ALJ's decision in the district court, which found the officer did not have reasonable
suspicion to stop him. DPS appeals from the district court order reversing the ALJ's suspension of
Eller's driver's license. Because we conclude (1) at least a scintilla of evidence supports the finding
that there was reasonable suspicion for the stop, and (2) at least a scintilla of evidence supports the
finding that Eller's alcohol concentration was over the limit, we reverse the county court at law's
judgment and reinstate the judgment of the ALJ. 

 If a person is arrested for drunk driving and takes a test that shows his or her alcohol
concentration to be 0.08 or higher, the DPS is directed to suspend his or her driver's license. Mireles
v.  Tex.  Dep't  of  Pub.  Safety,  9  S.W.3d  128,  130  (Tex.  1999);  see  Tex.  Penal  Code  Ann.
§ 49.01(2)(B) (Vernon 2003); Tex. Transp. Code Ann. § 524.012(b)(1) (Vernon Supp. 2009). A
person notified of the suspension of his or her driver's license may request a hearing before an ALJ.
Tex. Transp. Code Ann. §§ 524.031, 524.033 (Vernon 2007). At an administrative license hearing,
the DPS must prove by a preponderance of the evidence that there was reasonable suspicion to stop
a person who had an alcohol concentration of 0.08 or above while that person was operating a motor
vehicle in a public place. Tex. Transp. Code Ann. § 524.035(a) (Vernon Supp. 2009). "A person
whose driver's license suspension is sustained may appeal the decision" to obtain judicial review.
Tex. Transp. Code Ann. § 524.041 (Vernon 2007). 

 At the trial court level, review of an ALJ's decision is appellate in nature. Tex. Dep't of
Pub.  Safety  v.  Harris,  No.  06-07-00085-CV,  2007  WL  4386012,  at  * 2  (Tex.
App.--Texarkana Dec. 18, 2007, pet. denied) (mem. op.). Likewise, we independently determine
de novo whether the ALJ's decision was supported by the evidence before it. Id. (citing Tex. Dep't
of Pub. Safety v. Cuellar, 58 S.W.3d 781, 783 (Tex. App.--San Antonio 2001, no pet.); Raesner v.
Tex. Dep't of Pub. Safety, 982 S.W.2d 131, 132 (Tex. App.--Houston [1st Dist.] 1998, no pet.)).

 Our review is conducted under a substantial evidence standard. (1) Mireles, 9 S.W.3d at 131
(citing Tex. Transp. Code Ann. § 524.041; Tex. Gov't Code Ann. § 2001.174)). A court applying
the substantial evidence standard of review may not substitute its judgment for that of the agency. 
Id. at 131. Findings, inferences, conclusions, and decisions of the ALJ are presumed to be supported
by substantial evidence, and the burden is on the contestant to prove otherwise. Tex. Dep't of Pub.
Safety v. Raffaelli, 905 S.W.2d 773, 775 (Tex. App.--Texarkana 1995, no pet.). If there is more
than a scintilla of evidence to support either affirmative or negative findings on a specific matter, the
administrative decision must be upheld. Id. at 776; Harris, 2007 WL 4386012, at *2. 

 "At its core, the substantial evidence rule is a reasonableness or rational basis test." 
Raffaelli, 905 S.W.2d at 775. The issue for the reviewing court is only whether the record
demonstrates  some  reasonable  basis  for  the  ALJ's  action,  not  whether  it  was  correct. Mireles,
9 S.W.3d at 131. We must affirm the ALJ's findings if there is more than a scintilla of evidence to
support them. Id. In fact, the ALJ's decision may be sustained even if the evidence preponderates
against it. Id. "Thus, as has been acknowledged, the burden for overturning an agency ruling is
formidable." Harris, 2007 WL 4386012, at *2. 

(1) At Least a Scintilla of Evidence Supports the Finding that There Was Reasonable
Suspicion for the Stop

 "Reasonable suspicion exists when an officer has specific, articulable facts that, when
combined with rational inferences from those facts, would lead the officer to reasonably conclude
that a particular person actually is, has been, or soon will be engaged in criminal activity." Harris,
2007 WL 4386012, at *3; Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); see also
Terry v. Ohio, 392 U.S. 1 (1968). In assessing the reasonable suspicion determination, we consider
the totality of the circumstances while giving almost total deference to the ALJ's determination of
historical facts. Harris, 2007 WL 4386012, at *3 (citing Castro v. State, 227 S.W.3d 737, 741 (Tex.
Crim. App. 2007)).

 All motor vehicles in Texas must have a "taillamp or a separate lamp shall be constructed
and mounted to emit a white light that: (1) illuminates the rear license plate; and (2) makes the plate
clearly legible at a distance of 50 feet from the rear." Tex. Transp. Code Ann. § 547.322(f)
(Vernon 1999). The officer testified at the hearing in front of the ALJ that "[h]alf of [the license
plate light] was completely out. The other half was barely on, but it was completely blacked out
from my view." He clarified he could not see Eller's license plate from a distance of fifty feet, and
that there really was no white light illuminating the plate. (2) We conclude substantial evidence
supported the ALJ's decision that the officer had a reasonable suspicion the Texas Transportation
Code was being violated at the time he stopped Eller. 

(2) At Least a Scintilla of Evidence Supports the Finding that Eller's Alcohol Concentration
Was Over the Limit

 At the hearing in front of the ALJ, Eller objected to the admission of the certified breath
test result on the basis that there was no evidence it was administered in accordance with the Breath
Alcohol Testing Program. An affidavit of a breath test technical supervisor, admitted over the
objection that it was conclusory, stated "the records show that the test was administered in
compliance with the laws of the State of Texas and Regulations of the Breath Alcohol Testing
Program." The bare printout of the test results, signed by the administering officer, was also
included. Eller's counsel made clear that he was not disputing the "machine was working fine." (3) The
district court did not rule on Eller's complaint regarding admissibility of the breath test results. 

 Nevertheless, Section 524.038 of the Texas Transportation Code controls admissibility of
a technical supervisor's affidavit with respect to a blood test. Tex. Transp. Code Ann. § 524.038
(Vernon 2007). As a statutory exception to the hearsay rule, such an affidavit is admissible if it
contains  statements  "on  (1)  the  reliability  of  the  instrument  and  the  analytical  results;  and
(2) compliance with state law in administration of the program." Id.; see also Tex. Dep't of Pub.
Safety v. Jimenez, 995 S.W.2d 834, 837 (Tex. App.--Austin 1999, no pet.). Such statements have
been held not conclusory in the context of administrative hearings. Tex. Dep't of Pub. Safety v.
Seidule, 991 S.W.2d 290, 294 (Tex. App.--Houston [1st Dist.] 1998, no pet.). Further, the affidavit
establishes the proper predicate for admissibility of the breath test results. Jimenez, 995 S.W.2d at
837. "In the absence of a fact issue concerning whether the [breath] test was performed according
to the methods approved by the Department of Public Safety," "DPS was not obligated to prove
compliance," and the breath test "was properly admitted at the administrative hearing." Tex. Dep't
of Pub. Safety v. Barrera, No. 13-03-145-CV, 2004 WL 1351744, at *2 (Tex. App.--Corpus Christi
June 17, 2004, no pet.) (mem. op.); Sims v. State, 735 S.W.2d 913, 919 (Tex. App.--Dallas 1987,
pet. ref'd). 

 The breath tests, demonstrating Eller had a blood alcohol level of 0.129 during the first
testing and 0.126 during the second testing, are more than a scintilla of evidence to support the ALJ's
finding that Eller had an alcohol concentration of 0.08 or more while driving. See Mireles, 9 S.W.3d
at 132. The ALJ's judgment should not have been reversed. We reverse the judgment of the county
court at law and reinstate the judgment of the ALJ.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 13, 2009

Date Decided: November 4, 2009


1. Under the substantial evidence rule, a reviewing court may reverse or remand the case for
further proceedings only if substantial rights of the appellant have been prejudiced by ALJ findings
or rulings that were: (A) in violation of a constitutional or statutory provision; (B) in excess of the
agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of
law; (E) not reasonably supported by substantial evidence considering the reliable and probative
evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of
discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174
(Vernon 2008).
2. Eller argues that at least one half of the license plate was working and that the officer could
see the license plate when he turned on his headlights. While we can concede the rear license plate
was "barely" illuminated, nothing in the record suggests the plate was "clearly legible at a distance
of 50 feet from the rear." Tex. Transp. Code Ann. § 547.322(f). We do not rewrite the statute to
say the plate must be legible if a police officer is driving behind a suspect with his lights on because
the statute's purpose may also be to ensure officers on foot and potential witnesses are able to see
the license plate. In any event, even had Eller presented conflicting evidence on this point, we would
still be unable to disregard the ALJ's factual determinations. Mireles, 9 S.W.3d at 131. 
3. "If unextrapolated breath-test results are sufficient to sustain a criminal conviction for drunk
driving,  they  are  certainly  sufficient  to  sustain  an  administrative  license  suspension."  Mireles,
9 S.W.3d at 131. 


r years 2005-06 and the first part of 2007. 
Even assuming the trial court's award of five percent interest, we do not see how this evidence could
support an award of $43,214.19.

 We point out, though, the trial court judgment does not mention a figure of $27,943.52. The
judgment states that after Noble satisfied his child support obligations in full "as of September 1,
2004," he continued to pay "$996.00 per month through December 2005 and $600.00 per month
thereafter through the month of June 2007" and thus Noble "overpaid [Vail] $35,705.05." By our
reckoning, however, the indicated language asserts that Noble paid $996.00 for sixteen months
(September 2004 through December 2005), which amounted to $15,936.00, and $600.00 for eighteen
months, yielding $10,800.00. These figures total $26,736.00. This is $8,969.05 less than the total
arrived at by the trial court for these months' overpayments.

 After making this finding, however, the trial court judgment states Noble was entitled to
recover "pre-judgment interest on the sum of $25,705.05 from January 2006 through June of 2007,
at the rate of five percent and . . . to recover pre-judgment interest on the entire amount of
$35,707.05 from July 1, 2007, to August 1, 2008." Although no explanation is given for the figure
of $25,705.05, this figure evidently comes from the holding in the trial court's default judgment
entered October 30, 2007, (3) where the trial court made a finding that "the total amount [Noble] should
have paid was $54,188.67 and the actual amount [Noble] actually paid was at least $79,893.72 by
December 31, 2005." Setting aside the qualifier "at least," the difference between $54,188.67 and
$79,893.72 is $25,705.05. (4) It appears this may be the genesis of this figure which is so prominent
in the parties' discussions and arguments.

 Even if we assume the figure $25,705.05 comes from the October default judgment, there
is no explanation for the trial court's adding an even $10,000.00 to that for "the entire amount of
$35,705.05." Further, even assuming a factually sufficient basis for these figures, the trial court's
five percent interest would not produce a total of $43,214.19.

 It is true that Vail agreed, at the hearing, that Noble paid $90,189.17 over a "period of time"
and that these monies were paid "[t]oward [the] Louisiana judgment." But there is nothing in the
record detailing how much of that $90,189.17 makes up the overpayments forming the basis for
Noble's suit. Further, the totals detailed above simply do not support the trial court's award of
$43,214.19. The evidence, while legally sufficient, is factually insufficient to support the trial court's
judgment. Cf. RePipe, Inc. v. Turpin, 275 S.W.3d 39, 48 (Tex. App.--Houston [14th Dist.] 2008,
no pet.) (some evidence of damage rendered evidence legally sufficient, but where evidence clearly
showed damages were $49,360.86 less than jury's award, evidence was factually insufficient); Ayala
v. Valderas, No. 2-07-134-CV, 2008 Tex. App. LEXIS 8042 (Tex. App.--Fort Worth Oct. 23, 2008,
no pet.) (evidence in conversion case factually insufficient where jury award reflected replacement
value of property, but legal standard in such cases was fair market value).




 We reverse the judgment of the trial court and remand this case to that court for further
proceedings in accordance with this opinion.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: August 19, 2009

Date Decided: October 16, 2009
1. In the briefing and even in the record, Vail's name is usually spelled "Vail." However, in
at least one order, and on the cover of her appellate brief, her name is spelled "Vale." Also, in
several locations, her former husband refers to her as Sandra Vail Knowles. Vail testified she was
engaged to a Mr. Knowles, but does not refer to herself with that surname. Her former husband is
referred to variously as Neal Noble or Donald Neal Brown. For the sake of simplicity and
consistency, we will refer to the parties as "Vail" and "Noble." 
2. In a companion appeal, our cause number 06-08-00113-CV, the same two parties, under
different names, dispute the validity of a default judgment for Noble dated October 30, 2007,
involving part of his overpayment. In that case, Vail challenges the trial court's denial of Vail's bill
of review which sought to overturn that default judgment. The appeal of that case is addressed in
our separate opinion of even date herewith. Vail appeals both cases in a single brief; we address the
two cases separately.
3. This default judgment is involved in our companion cause number 06-08-00113-CV. In that
proceeding, the default judgment was challenged by a bill of review, which was denied by the trial
court. By our opinion in that appeal, released contemporaneously with this opinion, we reverse that
decision by the trial court and remand that case for a new trial.
4. We note that the October 2007 default judgment did not award $25,705.05 to Noble, but
simply found that he had overpaid Vail by "at least" that amount.