MEMORANDUM OPINION


No. 04-08-00711-CV



TEXAS DEPARTMENT OF PUBLIC SAFETY,


Appellant



v.



Jay Alan DISHMAN,


Appellee



From the County Court at Law, Medina County, Texas


Trial Court No. 2340


Honorable Vivian Torres, Judge Presiding



Opinion by: Catherine Stone, Chief Justice


Sitting: Catherine Stone, Chief Justice

 Karen Angelini, Justice

 Rebecca Simmons, Justice


Delivered and Filed: May 6, 2009


REVERSE AND RENDER JUDGMENT

 Jay Alan Dishman's driver's license was suspended following his failure of an alcohol
concentration test. Dishman challenged his license suspension at an administrative hearing; the
Administrative Law Judge (ALJ) sustained the suspension. Dishman appealed the administrative
decision to the trial court, and the trial court reversed the decision. The Texas Department of Public
Safety (TDPS) appeals the trial court's decision, and raises issues regarding 1) the number of
continuances that an ALJ is authorized to grant, and 2) the trial court's review of the ALJ's
evidentiary rulings. We reverse the judgment of the trial court and render judgment reinstating the
ALJ's order suspending Dishman's driver's license.

Background

 Trooper Robert E. Russell observed Dishman failing to stop at a stop sign, and traveling at
a speed twenty miles over the speed limit. After Trooper Russell stopped Dishman, questioned him
about whether he had been drinking, and conducted field sobriety tests, he arrested Dishman for
driving while intoxicated. Dishman provided a breath specimen showing his breath alcohol
concentration to be 0.177; his license was subsequently suspended. Dishman requested an
administrative hearing to contest the suspension. After hearing testimony and considering the
evidence, the ALJ rendered a decision sustaining Dishman's driver's license suspension. 

 Dishman appealed the ALJ's decision to the trial court. The trial court reversed the
administrative decision, specifically finding that: 1) a second continuance granted by the ALJ was
outside the ALJ's authority; 2) the court could not determine if a video of the encounter was
admitted into evidence; 3) the court could not determine if the video was reviewed by the ALJ or if
it was part of the record of the administrative law hearing; 4) Dishman was denied the right to
examine the trooper using the video; 5) Dishman was denied introduction of the portable testing
device as evidence and the opportunity to examine the trooper regarding it; 6) Dishman was denied
due process of law; and 7) the administrative decision was issued in violation of section 2001.174
of the Administrative Procedures Act. TDPS appeals the trial court's reversal of the administrative
decision.


Standard of Review

 A review of an administrative license suspension is conducted under the substantial evidence
standard of review. See Mireles v. Tex. Dep't of Pub. Safety, 9 S.W.3d 128, 131 (Tex. 1999). Under
this standard, the reviewing court cannot replace the ALJ's judgment with its own. See R.R. Comm'n
of Tex. v. Torch Operating Co., 912 S.W.2d 790, 792 (Tex. 1995). If the ALJ's decision is
supported by more than a scintilla of evidence, that decision must be upheld. See id. at 792-93. 
However, a trial court may reverse an ALJ's determination if a substantial right of the appellant has
been prejudiced because the ALJ's findings, inferences, conclusions, or decisions are not reasonably
supported by substantial evidence considering the record as a whole. See Tex. Gov't Code Ann. 
2001.174(2)(E) (Vernon 2008).

 The court of appeals reviews the trial court's substantial evidence review de novo. Tex.
Dep't of Pub. Safety v. Valdez, 956 S.W.2d 767, 769 (Tex. App.--San Antonio 1997, no pet.). In
determining whether the ALJ's decision was supported by substantial evidence, this court is
governed by the following principles: 1) the trial court will hear and consider evidence to determine
whether reasonable support for the ALJ's order exists, but the ALJ remains the primary fact finding
body, and the question for the trial court is strictly one of law; 2) the trial court may not substitute
its judgment for that of the ALJ on controverted issues of fact; 3) if the ALJ heard substantial
evidence that would support either an affirmative or negative finding, the trial court must allow the
ALJ's order to stand, even if the court would have differed with the result; 4) the trial court may not
set aside the ALJ's ruling merely because there was conflicting or disputed testimony; and 5) the trial
court is concerned only with the reasonableness of the ALJ's order not its correctness. Tex. Dep't
of Pub. Safety v. Fecci, 989 S.W.2d 135, 139 (Tex. App.--San Antonio 1999, pet. denied).

Continuances

 In its first issue, TDPS claims the trial court erred in ruling that the ALJ was not authorized
to grant a second continuance on the administrative hearing. Dishman's original hearing was
scheduled for March 3, 2008. TDPS requested a continuance because Trooper Russell was not
available on that date, and the ALJ reset the hearing for March 17, 2008. TDPS then requested a
second continuance, as the technical supervisor responsible for maintaining the instrument used to
test Dishman was not available on that date; the ALJ again reset the hearing for March 31, 2008. 
Dishman argued TDPS was allowed only one continuance, and on appeal the trial court agreed,
holding the second continuance was granted outside of statutory or administrative law authority. We
disagree with the trial court.

 TDPS argues that under Transportation Code section 524.039(b), an ALJ has to allow one
continuance per witness, but is also authorized to allow other continuances for good cause. It also
notes that while the trooper and technician were considered TDPS witnesses, they were subpoenaed
at Dishman's request. Dishman, however, argues the first continuance granted by the ALJ was in
violation of section 159.11 of the Texas Administrative Code because there was no showing Trooper
Russell was not available or could not appear; rather, the request simply stated Trooper Russell was
unable to leave his duty station. In addition, Dishman contends the second continuance should not
have been granted because section 159.11 allows for only one continuance. 

 We agree with TDPS's argument that the ALJ acted within its discretion in granting more
than one continuance. Section 524.039(a) provides the procedure to be used by a defendant
"requesting the presence at the hearing of the breath test operator who took the specimen of the
person's breath to determine alcohol concentration or the certified breath test technical supervisor
responsible for maintaining and directing the operation of the breath test instrument used to analyze
the specimen of the person's breath . . . ." Tex. Transp. Code Ann. § 524.039(a) (Vernon 2008). 
Section 524.039(b) notes that "[t]he department may reschedule a hearing once not less than 48
hours before the hearing if the person requested to attend under Subsection (a) is unavailable;"
however, it also provides that the department can reschedule a hearing on "showing good cause that
the person requested under Subsection (a) is not available at the time of the hearing." Id.
§ 524.039(b). Courts have recognized the discretion given to an ALJ to grant continuances. 1 Tex.
Admin. Code § 159.11(e) (2008) (State Office of Administrative Hearings); see, e.g., State v. Crank,
666 S.W.2d 91, 94 (Tex. 1984); Texas Dep't of Public Safety v. Struve, 9 S.W.3d 796, 801 (Tex.
App.--Corpus Christi 2002, pet. denied); Texas Dep't of Pub. Safety v. Cantu, 944 S.W.2d 493, 496
n.3 (Tex. App.--Houston [14th Dist.] 1997, no pet.). Consequently, the judge did not err in granting
more than one continuance due to the unavailability of witnesses. 

 Dishman also argues the ALJ erred in granting TDPS's continuance requests because TDPS
did not provide within its requests the required three dates during which the parties would be
available for rescheduling of the hearing, a certificate of service, or certificate of conference per
section 159.11(e). The referenced rule states:

. . . . A party requesting a continuance shall supply three dates during which the
parties would be available for rescheduling of the hearing, which dates, the Judge
will consider in resetting the case. Failure to include a certificate of service, a
certificate of conference, or supply three alternative dates may result in denial of the
continuance request or subsequent continuance requests in the same case.


1 Tex. Admin. Code § 159.11(e) (emphasis added). While the rule states the requesting party "shall
supply" either a certificate of service, certificate of conference, or three alternative dates, it provides
a permissive rather than mandatory remedy for noncompliance. Denial of the request was at the
ALJ's discretion, and therefore the ALJ did not err in granting the continuance request regardless
of the missing information. 

 The trial court erred in holding the second continuance by the ALJ was granted outside of
statutory or administrative law authority. TDPS's first issue is sustained.

Video Evidence

 In its second issue, TDPS argues the trial court erred in finding the video of the encounter
was not properly admitted and that Dishman's rights were prejudiced by his inability to question
Trooper Russell about the video. At the hearing, Trooper Russell announced he had brought a copy
of the video of the encounter pursuant to a subpoena duces tecum, but he was prohibited from
leaving it with the court. The ALJ granted a recess so TDPS could either produce the video or
provide a written explanation for why it should not be required to do so. When the hearing
reconvened at a later date, Trooper Russell did not appear as he had been released from his
subpoena, and the video was not produced. The ALJ ordered production of the video within five
days, and TDPS produced a copy for the administrative record. After the evidence was received, the
ALJ rendered a decision sustaining the suspension of Dishman's driver's license. On appeal to the
trial court, the trial court found it was not clear if the ALJ admitted the video, and Dishman was
denied the opportunity to cross-examine Trooper Russell after the video was produced.

 TDPS argues the video was admitted into evidence, noting that it is listed in the table of
contents of the administrative record as a defense exhibit, and that the ALJ's findings of fact
included information that could have been gathered only by viewing the video. While this might be
the case, review of the record reveals nothing more than inclusion of the video in the listing of
defense exhibits, and that during the last hearing the ALJ stated the video was to be produced for
inclusion in the record. 

 "Appellate courts have repeatedly held that evidence that is not objected to and that the trial
court and the parties treat as admitted is, for all practical purposes, admitted." Texas Health
Enterprises, Inc. v. Texas Dep't of Human Services, 949 S.W.2d 313, 314 (Tex. 1997) (citations
omitted). Here, because the evidence was not presented during a hearing, the parties did not have
any chance to object to its admission. Consequently, we conclude the video was not admitted as
evidence during Dishman's license suspension proceedings.

 Although we conclude the video was not admitted into evidence, this in itself does not
necessarily warrant reversal by the trial court. Reversible error does not usually occur in connection
with rulings on questions of evidence unless the party contesting its admission can demonstrate that
the whole case turns on the particular evidence that was admitted or excluded; consequently, if the
ALJ took the video into consideration when making his decision, the error is harmless if it is
cumulative of other evidence that was admitted on the same issue. Tex. R. App. P. 44.1(a); see
Pitman v. Lightfoot, 937 S.W.2d 496, 518 (Tex. App.--San Antonio 1996, writ denied ) (citations
omitted). 

 TDPS acknowledges that even if the video was admitted into evidence, the only part of the
video that was not cumulative of Trooper Russell's testimony, and which was referenced in the
ALJ's findings of fact, had to do with hearing the defendant over dispatch chatter, and a statement
that the test was done at night, in a rural area, without any illumination other than the trooper's
vehicle's lights and his flashlight. In reviewing the agency record, the existence of substantial
evidence turns on the question of reasonableness. Texas Dep't of Public Safety v. Pruitt, 75 S.W.3d
634, 639 (Tex. App.--San Antonio 2002, no pet.). The findings and conclusions of the agency are
presumed valid. Id. If there is evidence to support either affirmative or negative findings on a
specific matter, the administrative decision must be upheld. Id. (citations omitted). Based on the
remaining evidence introduced by Trooper Russell during Dishman's hearing, there was substantial
evidence introduced to support the ALJ's findings.

 We note that although Dishman sought admission of the video during the initial hearing,
noting that he thought it contained information that might help his case, he did not file a formal bill
of exception outlining what that evidence might have been. See Tex. R. App. P. 33.2; Barr v. Texas
Dep't of Public Safety, No. 04-02-00880-CV, 2003 WL 22047615, *1 (Tex. App.--San Antonio
2003, no pet.) (mem. op.) (not designated for publication) ("Because appellant did not make a bill
of exceptions that showed what the excluded testimony would have been, he did not preserve his
complaint for our review."). In addition, Dishman's brief to this court did not explain what probative
evidence might have been revealed had the video been introduced during a hearing so that he could
cross-examine Trooper Russell regarding its contents.

 Based on the above, TDPS's second issue is sustained.

Portable Breath Tester

 In its third issue, TDPS claims the trial court erred in holding the ALJ denied Dishman the
opportunity to introduce the portable testing device as evidence and to examine the portable breath
tester. During Trooper Russell's testimony, Dishman asked him if he had brought the portable
testing device used to test Dishman's breath the night of the arrest. Trooper Russell responded that
the device was in his vehicle. Dishman then stated that he had subpoenaed the device, but did not
enter any objection or obtain a ruling from the ALJ. On appeal, the trial court found Dishman was
denied the portable breath testing device and the ability to cross-examine Trooper Russell in
violation of the subpoena duces tecum. We disagree with the trial courts's finding.

 Review of the subpoena reveals that the portable testing device was not included as part of
the requested items; in fact, the subpoena simply requested "any and all manuals, books . . . as to
Robert E. Russell's training and pertaining to . . . Robert E. Russell's operation of the portable breath
testing device/maching/instrument . . . used on Jay Alan Dishman . . . ." The device itself was not
subpoenaed. Even if the device had been included in the subpoena, Dishman waived this matter
when he failed to enter a proper objection and receive a ruling on the matter. See Tex. R. App. P.
33.1(a). TDPS's third issue is sustained.

Basis of Reversal

 In its fourth issue, TDPS contends the trial court erred in impliedly reversing the
administrative decisions on some basis not specified in its order. In its judgment, the trial court
stated Dishman was denied due process of law, and that the administrative decision was in violation
of section 2001.174 of the Administrative Procedures Act. 

 The trial court's due process finding appears to originate from Dishman's complaint that the
evidence gained through Trooper Russell during his questioning and field testing of Dishman was
inadmissible. Dishman complained that he never received Miranda warnings before being
questioned, and did not know his answers and test results could be used against him. See Miranda
v. Arizona, 384 U.S. 436, 479 (1966) (holding that when an individual is subjected to questioning
while in custody without being first warned of his rights and without voluntarily waiving those
rights, any evidence obtained as part of that questioning may not be used against him at trial); see
also Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005). However, we find this argument
unconvincing. Miranda and article 38.22 apply only to custodial interrogations. Dowthitt v. State,
931 S.W.2d 244, 263 (Tex. Crim. App. 1996). As we have previously held:

Being in custody is distinguishable from being held as part of a temporary
investigative detention. An officer who lacks probable cause but whose observations
lead to a reasonable suspicion that a particular person has committed, is committing,
or is about to commit a crime, may detain that person briefly in order to investigate
the circumstances that provoke the suspicion. The officer may ask a moderate
number of questions to determine the person's identity and to try to gather
information to confirm or dispel the officer's suspicions.


Like a temporary investigative detention, a traffic stop does not exert "upon a
detained person pressures that sufficiently impair his free exercise of his privilege
against self-incrimination to require that he be warned of his constitutional rights." 
This is for two reasons: traffic stops tend to be brief, so drivers expect to answer a
few questions and be on their way shortly. Also, traffic stops tend to be in public
rather than at a station house, so drivers do not feel completely at the mercy of the
police.


In determining whether an individual was in custody, a court must examine all of the
circumstances, but the ultimate inquiry is simply whether there was a formal arrest
or restraint on freedom of movement to the degree associated with a formal arrest.
The relevant question is not the officer's subjective intent, but rather how a
reasonable person in the suspect's position would have understood the situation. The
"reasonable person" standard assumes an innocent person. The officer's subjective
view that the individual under questioning is a suspect, if undisclosed, is irrelevant
to the question of whether an individual is in custody for Miranda purposes.


Hernandez v. State, 107 S.W.3d 41, 47 (Tex. App.--San Antonio 2003, pet. ref'd).

 The traffic stop in this case was an investigative detention based on a reasonable suspicion
that a crime was being committed. Specifically, Trooper Russell observed Dishman failing to stop
at a stop sign, and speeding more than twenty miles per hour over the speed limit. Once Trooper
Russell stopped him, it took Dishman more than twenty seconds to get his door open and exit the
car. When Dishman exited the car, Trooper Russell observed that he was swaying, had red,
bloodshot eyes, and had a strong odor of alcohol coming from his mouth. When asked, Dishman
told Trooper Russell he was coming from a bar and admitted to having eight or nine drinks while
there. Dishman then failed several field sobriety tests. On these facts, Dishman was not in custody
for Miranda purposes until Trooper Russell formally arrested him, and therefore his due process
rights were not violated.

 Finally, the trial court found the ALJ's decision was in violation of section 2001.174 of the
Administrative Procedures Act. Section 2001.174 states:

[The reviewing court] shall reverse or remand the case for further proceedings if
substantial rights of the appellant have been prejudiced because the administrative
findings, inferences, conclusions, or decisions are: 


(A) in violation of a constitutional or statutory provision; 


(B) in excess of the agency's statutory authority; 


(C) made through unlawful procedure; 


(D) affected by other error of law; 


(E) not reasonably supported by substantial evidence considering the reliable and
probative evidence in the record as a whole; or 


(F) arbitrary or capricious or characterized by abuse of discretion or clearly
unwarranted exercise of discretion.


Tex. Gov't Code Ann. § 2001.174 (2) (Vernon 2008). 

 We disagree with the trial court's finding. Based on the issues discussed above, the ALJ's
decision was not made in violation of section 2001.174, and was reasonably supported by substantial
evidence. TDPS's fourth issue is sustained.

Conclusion

 The trial court's judgment is reversed and judgment is rendered reinstating the ALJ's
decision suspending Dishman's driver's license.

 Catherine Stone, Chief Justice